**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SUSAN PASKOWITZ, Individually and On Behalf of All Others Similarly Situated, | ) | |
| Plaintiff, | ) | Case No. _______________ |
| v. | ) | JURY TRIAL DEMANDED |
| THE MEET GROUP, INC., JEAN CLIFTON, GEOFFREY COOK, CHRISTOPHER FRALIC, SPENCER RHODES, KEITH RICHMAN, BEDI SINGH, and JASON WHITT, | ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on March 5, 2020 (the "Proposed Transaction"), pursuant to which The Meet Group, Inc. ("Meet Group" or the "Company") will be acquired by affiliates of NCG NuCom Group SE ("NuCom"), a joint company formed by ProSiebanSat. 1 Media SE and General Atlantic Coöperatif U.A.

2. On March 5, 2020, Meet Group's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with NuCom, eHarmony Holding, Inc. ("Parent"), and Holly Merger Sub, Inc. ("Merger Sub," and together with Parent, "eHarmony"). Pursuant to the terms of the Merger Agreement, Meet Group's stockholders will receive $6.30 in cash for each share of Meet Group common stock they own.

3. On April 2, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Meet Group common stock.

9. Defendant Meet Group is a Delaware corporation and maintains its principal executive offices at 100 Union Square Drive, New Hope, Pennsylvania 18938. Meet Group's common stock is traded on the NASDAQ Capital Market under the ticker symbol "MEET."

10. Defendant Jean Clifton is a director of the Company.

11. Defendant Geoffrey Cook is Chief Executive Officer and a director of the Company.

12. Defendant Christopher Fralic is a director of the Company.

13. Defendant Spencer Rhodes is Chairman of the Board of the Company.

14. Defendant Keith Richman is a director of the Company.

15. Defendant Bedi Singh is a director of the Company.

16. Defendant Jason Whitt is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Meet Group (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of March 3, 2020, there were approximately 71,088,852 shares of Meet Group common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other

members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

25. Meet Group is a leading provider of interactive livestreaming solutions.

26. The Company's ecosystem of livestreaming apps enables users around the world to interact through one-to-many livestreaming broadcasts and text-based conversations.

27. The Company's top MeetMe®, LOVOO®, Skout®, Tagged®, and Growlr® deliver live interactions and connections to millions of users daily.

28. On March 5, 2020, Meet Group's Board caused the Company to enter into the Merger Agreement.

29. Pursuant to the terms of the Merger Agreement, Meet Group's stockholders will receive $6.30 in cash for each share of Meet Group common stock they own.

30. According to the press release announcing the Proposed Transaction:

> The Meet Group, Inc. (NASDAQ: MEET), a leading portfolio of mobile dating apps, today announced that it has entered into a definitive agreement to be acquired by ProSiebenSat.1`s and General Atlantic's joint company NuCom Group in an all cash transaction for $6.30 per fully diluted share representing an enterprise value of approximately $500 million. Together with NuCom Group's portfolio company Parship Group, a matchmaking platform with its brands Parship, Elite Partner and eharmony, The Meet Group will become an integral part of a global leader in the online dating and social entertainment sector. . . .
>
> The transaction, which is expected to close in the 2nd half of 2020, is subject to approval by The Meet Group's stockholders, along with the satisfaction of customary closing conditions and regulatory approvals, including the expiration or early termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, antitrust approvals in Germany and Austria as well as approval from the Committee on Foreign Investment in the United States. The Meet Group expects to hold a special meeting of its stockholders to consider and vote on the transaction as soon as feasible after the mailing of the proxy statement to shareholders. . . .
>
> Representation
>
> BofA Securities is acting as financial advisor to The Meet Group, and Morgan, Lewis & Bockius LLP is acting as legal counsel.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

31. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33. First, the Proxy Statement omits material information regarding the Company's financial projections.

34. The Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA and (b) Adjusted EBIT; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

36. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, BofA Securities, Inc. ("BofA").

37. With respect to BofA's Selected Publicly Traded Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by BofA in the analysis.

38. With respect to BofA's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by BofA in the analysis.

39. With respect to BofA's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) BofA's basis for applying terminal multiples of 8.0x to 10.0x; (iii) the individual inputs and assumptions underlying the discount rates ranging from 7.50% to 10.00% and 7.00% to 9.00% and the perpetuity growth rates of 1.9% to 5.3%; (iv) the tax benefits estimated to result from the NOLs; and (v) BofA's basis for assuming an effective tax rate of 21.0%.

40. With respect to BofA's analysis of price targets, the Proxy Statement fails to disclose: (i) the price targets observed by BofA in the analysis; and (ii) the sources thereof.

41. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.

42. Third, the Proxy Statement fails to disclose whether the Company entered into any non-disclosure agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing other potential acquirors from submitting offers to acquire the Company.

43. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

44. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Company Board Recommendation; (iii) Opinion of The Meet Group's Financial Advisor; and (iv) Certain Company Unaudited Prospective Financial Information.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Meet Group

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Meet Group is liable as the issuer of these statements.

48. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Meet Group within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Meet Group and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the

power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 7, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ROY JACOBS & ASSOCIATES**
Roy L. Jacobs
420 Lexington Avenue, Suite 2440
New York, NY 10170
Telephone: (212) 867-1156
Facsimile: (212) 504-8343
Email: rjacobs@jacobsclasslaw.com